# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THOMAS "TOM" KUNA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 09-CV-1049-WDS |
| | ) | |
| ILLINOIS STATE BOARD OF ELECTIONS, STATE OF ILLINIOS, RAYMOND TRUE, JERSEY COMMUNITY UNIT SCHOOL DISTRICT #100, SHOP N' SAVE WAREHOUSE FOODS, INC., WAL-MART STORES, INC., SINCLAIR FOOD SOUTH, INC., | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**STIEHL, District Judge:**

Before the Court are several pending motions, including: Joint motion to dismiss filed by defendants Illinois State Board of Elections and the State of Illinois (Doc. 25), to which plaintiff has filed a response (Doc. 48) and defendants a reply (Doc. 49); a motion to dismiss filed by defendant Jersey Community Unit School District #100's ("School District") (Doc. 29), to which plaintiff has filed a response (Doc. 57); a motion to dismiss filed by defendant Shop N' Save Warehouse Foods, Inc's. ("Shop N' Save") (Doc. 40), to which plaintiff has filed a response (Doc. 60), and defendant a reply (Doc. 64); defendant Sinclair Food South, Inc's. ("Sinclair's") motion to dismiss (Doc. 46) to which plaintiff has filed a response (Doc. 59) and defendant a reply (Doc. 64); and a motion to dismiss filed by defendant Wal-Mart Stores, Inc's.

("Wal-Mart")(Doc. 54) to which plaintiff filed a response (Doc. 65) and defendant a reply (Doc. 66).

## I. BACKGROUND

Plaintiff filed his complaint pro se, and although not well-framed the Court gives it broad construction. Plaintiff's claims revolve around his unsuccessful attempt to run as a Republican candidate for the February 2, 2010, United States Senate primary in Illinois. Counts I, II and III, IV and VI of the plaintiff's complaint are directed at the State of Illinois and the Illinois State Board of Elections ("State Defendants").

Plaintiff contends that the State Defendants violated his constitutional rights, specifically, claiming that they violated Article IV, sections 1, 2 and 4, the "full faith and credit," "privileges and immunities," and "republican form of government" clauses of the United States Constitution, as they apply to the state of Illinois under the Fourteenth Amendment. U.S. Const. art. IV, §§ 1, 2, 4; U.S. Const. amend. XIV. Plaintiff's raises a Constitutional violation premised on Illinois Election Code's minimum signature requirement. *See* 10 ILCS 5/7-10(a) (2008).[1] Plaintiff claims that this requirement is too high to be met by "poor rural contenders." (Doc. 1.)

Plaintiff also claims that the State Defendants violated his "immunity" by giving Raymond True, a named defendant in this suit, "standing," see, *Moy v. Cowen*, 958 F.2d 168 (7th Cir.1992). The plaintiff further claims that these defendants have somehow violated California statutory and common law.[2]

---

[1] The statute requires any candidate running for statewide office, such as United States Senate, to obtain a minimum of 5,000 signatures on his petition for nomination. *Id.*

[2] How California law may apply, or would be relevant to claims in this District is not entirely clear to the Court.

Plaintiff also asserts that 10 ILCS 5/7-10.1 is unconstitutionally vague and does not specify which court, Illinois State Circuit Court or Federal District Court, has jurisdiction to hear his complaint against the Illinois State Board of Elections. Plaintiff requests that this Court grant him permission to file his claims in state court, without explaining how this Court either has jurisdiction to allow or could prevent such filing. Plaintiff seeks monetary damages and attorney fees, although he is proceeding without representation of counsel, from the State defendants.[3] Finally, plaintiff asks the Court to require the Illinois State Board of Elections to address any federal or state constitutional issues, presumably, when raised by another, or future contender for political office.

Count V of the complaint is directed to defendants School District, Shop N' Save, Sinclair and Wal-Mart, alleging that these public and private organizations barred plaintiff from circulating his nomination petition and other campaign materials. Plaintiff asserts that these defendants violated his First Amendment "free speech and assembly" rights, and that they violated his Article IV, section 4 right, "guarantee[ing him a] republican form of government."

Plaintiff requests seeks damages from the School District, Shop N' Save, Sinclair and Wal-Mart and a finding that these defendants' rules prohibiting the circulation of political petitions are unconstitutional.[4]

---

[3]Plaintiff also requests that the Court order the Illinois State Elections Board to place his name on the February, 2010, Republican primary ballot. Furthermore, plaintiff asks the Court to change the signature requirement from 5,000 to 1% of the registered voters in plaintiff's county. Additionally, plaintiff asks the Court to rule that 10 ILCS 5/7-10.1 is unconstitutionally vague. This claim, is clearly moot and is, therefore, **DISMISSED**.

[4]Plaintiff refers to the "by-laws" of these defendants, but, neither provides a current version of any of the defendants' by-laws, nor states what alleged language in the by-laws is unconstitutional, Therefore, the Court will address this issue as the "rules" of these individual defendants.

## II.    ANALYSIS

### A.    Summary of Pending Motions to Dismiss.

#### 1.    State Defendants (Doc. 26)

The State defendants seek dismissal of all counts of the complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. Specifically, the State defendants claim that sovereign immunity protects the state from suit. Plaintiff's response contains a new claim that the State's election laws raise such high barriers for candidates so as to amount to employment discrimination. Plaintiff also claims that his attempt to run for[5] for United States Senate was effectively an "employment application," and thus, the statute's signature requirement amounts to employment discrimination. Additionally, plaintiff claims that he filed an "identical action" in state court and that the State court took no action or even responded to his complaint. Additionally, in his response to the State defendants' motion, plaintiff moves the Court for leave to amend his complaint and name the following individual defendants, presumably in their official capacities: Illinois State Attorney General Lisa Madigan, Illinois Governor Pat Quinn and Chairman of the Illinois State Board of Elections Albert Porter.

#### 2.    The School District (Doc. 29)

The School District seeks dismissal of all counts on the grounds that the claims are moot, and pursuant to Fed. R. Civ. Pro. 12(b)(6), for failure to state a claim upon which relief can be granted. The School District asserts that because the conduct surrounding plaintiff's complaint is concerned with the primary election which was held on February 2, 2010, there is no live controversy for this Court to resolve and the issue is moot. Second, the School District asserts

---

[5]Presumably, plaintiff intended to allege that 10 ILCS 5/7-10(a) requiring a minimum of 5,000 signatures, discriminates against plaintiff as a contender from a less populous region of the state.

that it was precluded from allowing plaintiff to circulate his nominating petition by the Election Interference Law, 10 ILCS 5/7-25.1. This statute prohibits the use of public funds, "to urge any elector to vote for or against any candidate or position." 10 ILCS 5/7-25.1(b) (2008). Finally, the School District asserts that the plaintiff has not raised a viable claim as to how the First Amendment guarantees him a right to circulate campaign materials on a private school property owned by a public entity. That is, plaintiff failed to show how the School District constitutes any type of a forum let alone a public forum, and, therefore, it should not be held liable for any infringement on plaintiff's Constitutional rights. Finally, the School District asserts that since plaintiff's complaint is related to the February, 2010 election, Illinois Election Code governs the complained of conduct. Thus, under 10 ILCS 5/9-20 (2008), plaintiff should have first filed a complaint with the Illinois Election Board. And if unsuccessful, he could have then filed for review with the state appellate court for the district in which the cause of action arose. *See* 10 ILCS 5/9-22 (2008).

In his response, plaintiff essentially argues that the issue is not moot because it is, "capable of repetition yet evading review." Additionally, plaintiff challenges the School District's interpretation of 10 ILCS 5/7-25.1(b), as being too broad. Plaintiff argues that since public funds are expended for creation and upkeep of public streets, sidewalks and parks, under the School District's reading of the statute, campaigning activity would be illegal there as well.

Plaintiff, also attempts to amend his complaint to include factual information. Essentially, plaintiff claims that he telephoned the Superintendent of the School District and asked for his permission to stand near the exits of the football field in order to solicit nomination petition signatures from the public entering and exiting a football game. Plaintiff argues that because he

5

attempted to solicit signatures during a public event – a football game – the School District became a public forum. Therefore, he was entitled to Constitutional protections traditionally associated with public venue. Plaintiff adds information regarding his attempts to obtain administrative relief from the Illinois State Board of Elections. As will be noted bellow, such attempts were not necessary and their factual recitation is irrelevant.

### 3. Remaining Defendants (Docs. 41, 47, & 55)

Defendants Sinclair, Shop N' Save and Wal-Mart seek dismissal of plaintiff's complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), for failure to state a claim upon which relief can be granted. Sinclair and Wal-Mart initially argue that since the election is over, the complaint is moot. Additionally, these defendants, joined by Shop N' Save, argue that as private entities, they could not have violated defendant's constitutional rights.

Plaintiff argues that his complaint is not moot because it presents an issue of substantial public interest and thus constitutes a well recognized exception to the rule. With respect to the remaining arguments of Sinclair, Shop N' Save and Wal-Mart remaining arguments, plaintiff claims that he called the store managers of the three defendants around late August, and asked for permission to stand on a sidewalk in front of the stores to solicit signatures. All store managers denied permission. Plaintiff then argues that Sinclair, Shop N' Save, and Wal-Mart are each public fora and thus should not have interfered with plaintiff's political speech – and that each had public bulletin boards which, in addition to commercial notices, allowed announcements of public events. Additionally, the stores allowed charitable organizations such as the Salvation Army and various school groups to use entry points to the store for fund raising activities. He claims that those organizations which obtained the three store defendants'

permission to use public entry points, should not have more rights to public access, than a potential political candidate's right to solicit signatures for nominating petitions.

 2. **Discussion**

To sustain a dismissal of a complaint under Fed. R. Civ. Pro. 12(b)(6), the Court must take all well pleaded allegations as true and construe the complaint in light most favorable to the plaintiff. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that no relief may be granted under any set of facts that could be proved consistent with the allegations in the complaint. *Conley*, 355 U.S. at 45-46. The Seventh Circuit has instructed that a plaintiff's claims must survive a 12(b)(6) dismissal motion if relief could be granted under any set of facts that could be proved consistent with the allegations. *Hi-Lite Products Co. v. American Home Products Corp.*, 11 F.3d 1402, 1409 (7th Cir. 1993).

 1. **State of Illinois and Illinois State Board of Elections**

The State of Illinois and the Illinois State Board of Elections ("ISBE") are one legal entity for the purpose of this suit because ISBE is an agency of the State. *See e.g., Smith v. Boyle*, 959 F. Supp. 982, 986 (C.D. Il. 1997); *modified and affirmed on appeal,* 144 F.3d 1060 (7th Cir. 1998). The State Defendants assert that plaintiff's claim is barred by Eleventh Amendment immunity. "Although the express terms of the Eleventh Amendment do not say as much, the Supreme Court long ago held that a citizen of a state may not bring an action against his own state in federal court." *Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir. 1997) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)). "Thus, generally, the Eleventh Amendment bars a citizen from suing his state, a state agency, or a state official (in his or her official

capacity) in federal court, unless the state consents to suit in federal court or Congress has abrogated the state's immunity." *Hulme v. Madison County*, 01-CV-0456-DRH, 2001 WL 1803690, at *3 (S.D. Ill. Aug. 29, 2001).

The State of Illinois has waived its immunity in some employment discrimination claims, *See* 745 Ill. Comp. Stat. 5/1.5 (2004), but plaintiff has not successfully raised a viable employment discrimination claim in this case. Even if he had, his claim that, "an attempt by an eligible U.S. Citizen to run for election to a Federal Office [sic]. . . is in fact an application for employment by the people of said jurisdiction," is without merit. The Court finds that the State Defendants have not, under the circumstances here alleged, waived their immunity.

The remaining issue, then, is whether Congress has abrogated the State's immunity. While plaintiff does not directly allege that he is bringing his suit under 42 U.S.C. § 1983, this is, clearly, the basis of his complaint. Suits alleging constitutional violations by the State may be typically brought under § 1983. *See, e.g., Tobin for Governor v. Illinois State Board of Elections*, 268 F.3d 517 (7th Cir. 2001) (plaintiff bought suit under §1983 alleging violations of the First and Fourteenth Amendment). Since plaintiff's allegations are based on various constitutional violations, and § 1983 grants plaintiff a cause of action for deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States, the Court will construe the complaint as if it had been framed as seeking relief pursuant to that provision.

To state a viable claim for employment discrimination, plaintiff can raise one of three grounds: (1) disparate treatment based on race; (2) a racially hostile work environment; and (3) retaliation. The *prima facie* elements of these three theories of employment discrimination are substantially same whether brought under Title VII, § 1981 or § 1983. *Eiland v. Trinity Hosp.,*

150 F.3d 747, 750 (7th Cir.1998); *Riordan v. Kempiners,* 831 F.2d 690 (7th Cir.1987). To establish a prima facie case of discrimination a plaintiff must show that: (1) he belongs to a protected class; (2) he performed his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside a protected class were treated more favorably. *See Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 978 (7th Cir. 2004). Notably, this is *not* a case where the plaintiff was terminated, or otherwise discriminated against in his employment due to political views, or a refusal to campaign in an election, *see, e.g. Carlson v. Gorecki*, 374 F.3d 461, 465 (7th Cir. 2004), rather, this modification of his claim is that he somehow *could not* achieve his goal of employment (by way of an election) as a United States Senator due to the practices of the State defendants. This is a novel claim, at best, and not one cognizable under employment discrimination claim standards.

Congress has not abrogated a state defendant's immunity to suit under § 1983. *Hulme*, 2001 WL 1803690 at *3. Plaintiff has not demonstrated any set of facts that would make relief against the State Defendants possible. Therefore, the Court **GRANTS** the State Defendants' Motion to Dismiss and plaintiff's complaint against the State of Illinois and Illinois State Board of Elections is **DISMISSES WITH PREJUDICE**.

Plaintiff's response contains an additional request to amend his complaint to add the following individual defendants: Illinois State Attorney General Lisa Madigan, Illinois Governor Pat Quinn and Chairman of the Illinois State Board of Elections Albert Porter. Plaintiff can no longer amend his pleading as a matter of course, and now needs leave of Court to do so. Fed. R. Civ. Pro. 15(a). "The court should freely give leave when justice so requires." *Id*. However, "a

9

district court need not allow the filing of an amended complaint. . . if it is clear that the proposed amended complaint is deficient and would not survive the motion to dismiss." *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008). Thus, the issue becomes whether plaintiff can state a viable cause of action against the proposed defendants.

Plaintiff attempts to join these proposed defendants under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908). This doctrine is based on a theory that a state official who acts unconstitutionally is proceeding without the authority of the state and that does not affect the state in its sovereign capacity. *Id.* at 159. In such a case, the officer is "simply prohibited from doing an act which he had no legal right to do." *Id*. If the Court were to allow plaintiff to join the proposed defendants, plaintiff would presumably argue that the proposed defendants acted unconstitutionally because they would have denied his petition for ballot placement, had he submitted a nominating petition containing an insufficient amount of signatures according to 10 Ill. Comp. Stat. 5/7-10(a). Plaintiff essentially attacks the constitutionality of 5/7-10(a), because it requires him to obtain a minimum of 5,000 signatures before he is placed on the ballot for elections for statewide office; a requirement that he alleges puts an undue burden on him because he is a rural contender.

Under a general constitutional review, the validity of a minimum 5,000 signature requirement withstands scrutiny. In *Ill. State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979), the Supreme Court found that restrictions on ballot access burden two distinct and fundamental rights: the right to associate to advance political beliefs and the right of voters to vote effectively. When such rights are burdened, the state has to establish that the burden is necessary to serve a compelling interest. *Id.* In *Socialist Worker's Party*, the Court

found that a state may assert several legitimate interests. *Id*. First the state has a legitimate interest in regulating the number of candidates appearing on the ballot. *Id*. Second, the state has an interest in assuring that the winner commands at least a strong plurality, thereby limiting the necessity of runoff elections. *Id.* The Court did, however, note that these interests must be achieved by the least restrictive means available. 440 U.S. at 184. In *Socialist Workers Party*, the Court addressed a disparity between the signature requirements for statewide office and signature requirements for office of a political subdivision of the state. *Id.* at 176. The former required a minimum 25,000 signatures of eligible voters, while the latter required 5% of the persons who voted at the previous election for the offices of that particular subdivision. *Id*. The Court found that the "Illinois Election Code is unconstitutional insofar as it requires independent candidates and new political parties to obtain **more** than 25,000 signatures." *Id.* at 187 (emphasis added). Implicitly, however, the Court agreed with the statute's minimum 25,000 signature requirement as serving an important interest in avoiding overloaded ballots in statewide elections. *Id*. at 186. Thus, the Court determined that legitimate state interests, outweighed the burden on ballot access created by the minimum 25,000 signature requirement. *Id.*

    Here, plaintiff is challenging the constitutionality of a 5,000 minimum signature requirement. In light of the Supreme Court's findings in *Socialist Workers Party*, plaintiff cannot prevail on a theory that a 5,000 minimum signature requirement, mandated by 5/7-10(a), is unconstitutionally burdensome. This Court cannot find that plaintiff has established that the state-wide minimum requirement of 5,000 signatures is an unconstitutional burden on ballot access, rather, it is a minimum requirement which is only a fraction of what has already been found to be constitutionally valid in a previous action.

Therefore, the Court **FINDSB** that plaintiff's motion to add as defendants Illinois State Attorney General Lisa Madigan, Illinois Governor Pat Quinn and Chairman of the Illinois State Board of Elections Albert Porter, is not warranted because plaintiff has not raised an actionalble claim against these prospective defendants, and therefore, the Court **DENIES** plaintiff leave to amend the complaint. *Accord, Johnson*, 515 F.3d at 780.

### 2. Mootness Issues

Defendants School District, Sinclair and Wal-Mart seek dismissal of plaintiff's claims against them on the grounds that those claims are now moot because they all relate to the February 2, 2010 election. Since the election is over, there are, technically, no live issues for this Court to entertain. A case is moot when it no longer represents a live controversy. *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001). A plaintiff seeking "to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an *actual* case or controversy." *Id.* at 527 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)) (emphasis added). A controversy relating to an election can, however, satisfy the "capable of repetition yet evading review" exception to the mootness doctrine. *Stewart v. Taylor*, 104 F.3d 965, 969 (7th Cir. 1997). Although the February 2, election has already taken place, a challenge, such as the one presented here, could, arguably, meet the exception if there is a *reasonable expectation* that the same party would be subjected to the same action again, because elections are routinely too short in duration to be fully litigated. *See id.*

### a.  Defendant School District

The School District asserts that under 10 ILCS 5/7-25.1(b), it is prohibited from involvement in political activities, and therefore, not subject to suit by plaintiff for not allowing him to electioneer on its premises. If plaintiff attempts to run again, it is likely that he will again be denied access to the school's premises based on the School District's interpretation of the statute.

> [C]ases that have traditionally fallen within the "capable of repetition, yet evading review" exception have involved challenges to the validity of statutory provisions that will continue to operate past the election in question and that will burden future candidates in future elections. . . . In those circumstances, the challenge reflects a "continuing controversy," and the construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held.

*Tobin for Governor*, 268 F.3d at 529. School District relies on 10 ILCS 5/7-25.1(b), to bar plaintiff from entry on school premises, therefore, the controversy remains potentially viable as to this defendant. Applicability of this statute to this issue has not been clearly resolved in this circuit. In fact, the School District's broad interpretation of 10 ILCS 5/7-25.1(b), is rather novel.

This does not end the inquiry, however, as plaintiff's claims run afoul of the second requirement to application of the mootness exception. The second prong of the "capable of repetition, yet evading review" exception states that the complainant needs to show "that there is a reasonable expectation that *same complaining party* will be subjected to the same action again." *Tobin for Governor*, 268 F.3d at 529 (emphasis added).

A careful review of the complaint fails to reveal any claim by plaintiff that he intends to run for public office in the future. The Court cannot, from his claims, infer plaintiff's future

13

intentions. Although a *pro se* plaintiff is normally not a practicing attorney with the necessary skill to draft a complaint using the necessary "magic words" that would allow it to pass procedural muster. The Court recognizes its "well established duty . . . to ensure that the claims of a *pro se* litigant are given a fair and meaningful consideration." *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 555 (7th Cir. 1996). Even under this standard, the plaintiff's claims, are, therefore, moot because plaintiff has not shown that it may, in the future, subject him to similar treatment. Therefor, the complaint against the School Board is subject to dismissal on that ground.

But, even if not moot, the claims against the School Board are also subject to dismissal because, the Supreme Court has established that the limits, if any, that the government can place on the expression of protected speech depends on the nature of the forum. *Vukadinovich v. Bd. of Sch. Trustees of Michigan City Area Sch.,* 978 F.2d 403, 409 (7th Cir. 1992) (citing *Frisby v. Schultz,* 487 U.S. 474, 479 (1988)). There are three areas identified: (1) the traditional public forum; (2) the public forum created by government designation; and (3) the nonpublic forum. *Id.* Public schools are of the second type but they become a public forum "only if school authorities have 'by policy or by practice' opened those facilities 'for indiscriminate use by the general public' or by some segment of the public such as student organizations." *Hazelwood School Dist. v. Kuhlmeier,* 484 U.S. 260, 267 (1988).

Government restrictions on speech in a designated public forum are subject to strict scrutiny. *Pleasant Grove City v. Summum*, 129 S. Ct. 1125, 1132 (2009). "Reasonable time, place, and manner restrictions are allowed, but any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling

14

government interest." *Id.* (internal citations omitted). The Seventh Circuit has recognized that has recognized that "[p]roperty can be designated as a public forum either by tradition or by law." *Grossbaum v. Indianapolis-Marion County Bldg Auth.,* 100 F.3d 1287, 1296 (7th Cir. 1996). Further "[a]ny speech regulation in a public forum must be either 1) a reasonable, content-neutral time, place, and manner restriction, or 2) narrowly drawn to advance a compelling state interest." *Id.* at 1297 (citations omitted). In this case, it is not evident that the School District has created a designated public forum,[6] and this precludes the plaintiff's claims. However, even if it were a public forum, if the regulation is "content-neutral" there is no violation because the regulation is not a "facade for viewpoint-based discrimination." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 811 (1985). In this case, the plaintiff has not established that the School District restrictions were anything other than content neutral, and, therefore, the School's motion to dismiss is **GRANTED**.

      **b.**      **Defendants Sinclair, Shop N' Save and Wal-Mart**

Defendants Sinclair, Shop N' Save and Wal-Mart essentially argue that as private entities they are incapable of state action that could violate plaintiff's constitutionally protected rights. In *Lloyd Corp. Ltd., v. Tanner*, 407 U.S. 551 (1972), the Supreme Court again affirmed its holding that, "First and Fourteenth Amendments safeguard the rights of free speech and assembly by limitations on state action, not an action by the owner of private property used nondiscriminatorily for private purposes only." *Id.* at 567. In this case, a large shopping center prohibited the distribution of handbills on its property. *Id* at 565-67. The Supreme Court refused

---

[6]The Court notes that while plaintiff's response to defendant's motion contained an attempted factual amendment to the complaint, that amendment lacked any facts that would tend to show that the School District has opened its facilities for the use by the public, thus creating a designated public forum.

to find that a shopping mall, by virtue of being open to the public, somehow dedicated itself to public use with similar constitutional protections "afforded to citizens on public streets of cities or towns." *Id.* at 569. The Court stated, "property [does not] lose its private character merely because the public is generally invited to use it for designated purposes." *Id.* Additionally, in *Hudgens v. National Labor Relations Board*, 424 U.S. 507 (1976), the Supreme Court applied its *Lloyd Corp. Ltd.*, reasoning finding that a private store could prohibit union picketing on its property.

In *People vs. DiGuida*, 152 N.E.2d 336, 340 (Ill. 1992), the Illinois Supreme Court recognized, however, that states are free to adopt their own constitutional liberties more expansive than those conferred by the United States Constitution. The Illinois Supreme Court noted that Illinois constitutional free speech protection "was not intended to apply to actions taken by private persons, but only to actions by the State." *Id.* at 345. The defendant in *DiGuida*, attempted to gather nominating signatures on private property owned by Dominick's grocery store. The defendant was asked to leave and after not complying, he was arrested for trespass. The issue before the Illinois court was whether defendant's activity was protected by free speech provisions. "Thus, whether defendant's speech was constitutionally protected [became] a question of whether Dominick's itself had taken on such a public aspect that it became a forum for free expression." *Id.* at 346. Despite noting that Dominick's has permitted solicitation of signatures in the past, the court found that Dominick's did not present itself as a forum for free expression. *Id.*

Plaintiff essentially argues that Sinclair, Shop N' Save and Wal-Mart each created a limited public forum because they allowed public bulletin boards at their locations. Yet, in

16

*DiGuida*, the court reached the exact opposite conclusion and found that, "the fact that Dominick's allowed people to leave messages on a public bulletin board inside the store does not persuade [the court] that the store has thus transformed into a public forum." *Id.* See, also, *Milwaukee Deputy Sheriffs Ass'n v. Clarke*, 513 F.Supp.2d 1014, 1022 (E.D. Wis. 2007) (religious forum case). The Court **FINDS** that the existence of a public bulletin board does not transform any of the stores into public forum. Notably, in this case, the question at issue is not regulation versus preclusion of political speech on private property; it is whether private property becomes something more, merely because it allows some political speech on its grounds. Under the claims here presented, the Court finds that Sinclair, Shop N' Save and Wal-Mart are not public fora. The Court has reviewed other claims made by plaintiff in his original complaint and responses and finds them to be without merit.

Accordingly, the Court **GRANTS** the motions to dismiss filed by defendants Sinclair, Shop N' Save and Wal-Mart pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claimand plaintiff's claims against Sinclair, Shop N' Save and Wal-Mart are **DISMISSED.**

## CONCLUSION

Accordingly, the Court rules as follows:

1. The Court **GRANTS** defendants Illinois State Board of Elections and State of Illinois motion to dismiss (Doc. 25) and plaintiff's claims against these defendants are **DISMISSED WITH PREJUDICE**.

2. The Court **GRANTS** the motion to dismiss filed by Jersey Community Unit School District #100 (Doc. 29) and plaintiff's claims against this defendant are **DISMISSED**.

3. The Court **GRANTS** the motion to dismiss filed by defendant Shop N' Save Warehouse Foods, Inc. (Doc. 40) and plaintiff's claims against this defendant are **DISMSSED**.

4. The Court **GRANTS** defendant Sinclair Food South, Inc.'s motion to Dismiss (Doc. 46) and the plaintiff's claims against this defendant are **DISMISSED**.

5. The Court **GRANTS** defendant Wal-Mart Store's Inc.'s motion to dismiss (Doc. 54) and plaintiff's claims against this defendant are **DISMISSED.**

In light of the dismissal of the complaint in its entirety, the Court:

1. **DENIES**, as moot, plaintiff's motion for extension of time (Doc. 44).

2. **DENIES**, as moot, plaintiff's motions for leave to amend or correct the complaint (Docs. 45, 61)

3. **DENIES**, as moot, Plaintiff's motion for Order to show cause (Doc. 74).

**IT IS SO ORDERED.**

**DATE: 26 September, 2011**

                                      **/s/ WILLIAM D. STIEHL**
                                          **DISTRICT JUDGE**